```
 1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK
 2

 3   ----------------------------------------X
                                            :
 4   ELCHONON SCHWARTZ,                      : 19-CV-01834 (ALC)
                                            :
 5                        Plaintiff,         :
                                            :
 6               v.                          :
                                            : 500 Pearl Street
 7   TRANS UNION, LLC,                       : New York, New York
                                            :
 8                        Defendant.         : May 16, 2019
     ----------------------------------------X
 9

10              TRANSCRIPT OF CIVIL CAUSE FOR
             INITIAL CASE MANAGEMENT CONFERENCE
11            BEFORE THE HONORABLE ONA T. WANG
                UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14   For the Plaintiff:        URI HOROWITZ, ESQ.
15                             Horowitz Law PLLC
                               14441 70th Road
16                             Flushing, New York 11367

17   For the Defendant:        CAMILLE R. NICODEMUS, ESQ.
18                             Schuckit & Associates, PC
                               4545 Northwestern Drive
                               Zionsville, Indiana  46077
19

20
     Court Transcriber:        MARY GRECO
21                             TypeWrite Word Processing Service
                               211 N. Milton Road
22                             Saratoga Springs, New York 12866

23

24

25


     Proceedings recorded by electronic sound recording,
 1   transcript produced by transcription service
```

2

1    MR. HOROWITZ:  Uri Horowitz for the plaintiff.

2    THE COURT:  Good afternoon, Mr. Horowitz.

3    MR. HOROWITZ:  Good afternoon.

4    THE COURT:  And on the phone we have?

5    MS. NICODEMUS:  This is Camille Nicodemus

6 representing Trans Union, Your Honor.

7    THE COURT:  Good afternoon, Ms. Nicodemus.

8    MS. NICODEMUS:  Good afternoon.

9    THE COURT:  All right.  We here for an initial case

10 management conference.  I have the parties' 26(f) report.

11 Before I ask you some questions about your proposed discovery

12 plan, Mr. Horowitz, could you please tell me a little bit about

13 the case?

14    MR. HOROWITZ:  Sure.  My client, Mr. Schwartz, has

15 excellent credit and specifically with the trade line in

16 question.  The trade line in question has a late payment

17 showing, only one late payment on the entire trade line and

18 that's for January of 2015.  The late payment is showing.  My

19 client had sent over a dispute letter to the defendant on the

20 case.  The defendant just verified it.  But as we alleged,

21 defendant did not properly investigate and see that in fact the

22 late payment being reported was actually incorrect.  As such,

23 we feel that Trans Union has violated the FCRA.

24    THE COURT:  And what are the damages that plaintiff

25 would be seeking?  Are they monetary damages?

1          MR. HOROWITZ:  Correct.  Yes.

2          THE COURT:  And what?

3          MR. HOROWITZ:  The monetary damages are both

4  statutory under the FCRA under 1,000 under the FCRA for

5  statutory damage and then actual damages as well.

6          THE COURT:  And so statutory damages are up to 1,000.

7          MR. HOROWITZ:  Up to $1,000.

8          THE COURT:  And actual damages on top of that or --

9          MR. HOROWITZ:  Yes.  No, on top of that.

10          THE COURT:  All right.

11          MR. HOROWITZ:  Actual and punitive as well if you can

12  find that there's a what's called violation, a willful

13  violation.

14          THE COURT:  Okay.  Now what happened after -- so

15  there is -- I'm just trying to understand the time frame.

16          MR. HOROWITZ:  Sure.

17          THE COURT:  After the allegedly late payment in

18  January 2015 -- was there a late payment or not?  I guess let's

19  start there.

20          MR. HOROWITZ:  Oh, I mean no.  We say there was not.

21  We say that there was no late payment in January.

22          THE COURT:  There was no late payment.

23          MR. HOROWITZ:  Right.

24          THE COURT:  They just escalated it with Trans Union.

25          MR. HOROWITZ:  Correct.

4

1          THE COURT:  You're alleging that Trans Union failed

2  to investigate.

3          MR. HOROWITZ:  Correct.

4          THE COURT:  How long did that go on and what happened

5  after that?

6          MR. HOROWITZ:  So my client had sent over multiple

7  disputes over to Trans Union.  Each time Trans Union just

8  verified and said the account is reporting in the correct way,

9  accurately.  So the only recourse my client had was to file

10  suit or to reach out to an attorney and file suit.

11          THE COURT:  Wait.  So there was never any correction?

12  So --

13          MR. HOROWITZ:  Never any correction.

14          THE COURT:  So this is still apparently reporting --

15          MR. HOROWITZ:  Still ongoing.  I don't know right now

16  but when we filed it was, it was still ongoing.

17          MS. NICODEMUS:  May I jump in on behalf of Trans

18  Union to clarify, Your Honor?

19          THE COURT:  Sure.

20          MS. NICODEMUS:  Okay.  Before we even get to the

21  question of Trans Union's reasonable reinvestigation and

22  whether it satisfied the FCRA and whether plaintiff has any

23  damages, it is the plaintiff's burden in the first instance to

24  establish an inaccuracy.  In other words, what was reported was

25  in fact inaccurate.  That's plaintiff's burden.  And this is

5

1   plaintiff's credit card account with American Express.  He

2   chose not to sue American Express, bring American Express into

3   the case where we might have some documents from American

4   Express.  Instead, he just --

5         THE COURT:  Sorry, sorry, Ms. Nicodemus, can you slow

6   down a little bit because through the speakerphone it's hard to

7   make out your words.

8         MS. NICODEMUS:  Absolutely, Your Honor.  Is this

9   better?  So it is plaintiff's burden to establish an inaccuracy

10  in the first instance and this is plaintiff's account with

11  American Express.  And I've asked plaintiff's counsel to just

12  simply provide me with a copy of the tracks or the statements

13  or some evidence that in fact the payment was timely made and

14  he has not done that.  I would assume that would have been

15  something that plaintiff's counsel would have done before

16  filing the complaint since proof of an inaccuracy is

17  plaintiff's burden and failure to do so is a complete defense

18  to Trans Union.

19        In any event, Trans Union did, each time that

20  plaintiff complained about this account, did in fact contact

21  American Express and each time American Express did tell Trans

22  Union that in fact that payment was made late and was

23  accurately reporting.  So it's very difficult for us to

24  consider resolving this case unless and until plaintiff can

25  establish an inaccuracy.  And we've been in this situation

6

1   before.  We have had some judges that were willing to issue an

2   order asking plaintiff to provide proof of the inaccuracy or

3   dismiss the case.  In the alternative, to allow Trans Union to

4   file an early motion for summary judgment to dismiss it.  But

5   it's very difficult to proceed when plaintiff has not

6   established that he has in fact an inaccurate item on his

7   report.  We are entitled under the statute to rely on the

8   furnisher's verification.  American Express has the records

9   showing that this payment was late and that's what they've told

10  us on ten separate occasions.

11          THE COURT:  Okay.  Mr. Horowitz, why haven't you

12  provided that?

13          MR. HOROWITZ:  So my client did not have it.  It's

14  obviously the account or the late payment is from January 2015,

15  so my client doesn't have any records.  Obviously, once we go

16  further in the case, we'll go ahead and subpoena the records

17  from American Express.

18          THE COURT:  What do you mean he doesn't have the

19  records?

20          MR. HOROWITZ:  He doesn't have them.  He's not able

21  to access them.

22          THE COURT:  Why?

23          MR. HOROWITZ:  I don't know.  He's just not able to

24  access the credit card records.  Maybe they do not go all the

25  way till what's it called, all the way back until 2015.

7

1          THE COURT:  So but as his lawyer you're required to

2    do at least some amount of investigation to understand --

3          MR. HOROWITZ:  Understood, but --

4          THE COURT:  -- the merits of the case before you

5    bring it, right?

6          MR. HOROWITZ:  Yes.

7          THE COURT:  And it certainly wouldn't be in your

8    interest to pursue a case if you couldn't get your client even

9    past the first hurdle.  I guess I'm trying to understand why

10   you would continue to litigate something that concerns an

11   alleged late payment from four years ago without knowing that

12   this is your burden to prove and not having that in hand.

13         MR. HOROWITZ:  So my client had told me that he

14   was -- that he made that payment on time.  There was no late

15   payment.  I could see from the rest of his credit history that

16   he is the type of consumer that always pays on time.  All of

17   his other trade lines on his credit report, including the one

18   that's in question, the American express trade line, the

19   account has been paid every single month on time.  The only

20   month that was not paid according to Trans Union timely was the

21   one that's in question here.  So I spoke to my client.  My

22   client was unable to -- my client's unable to produce the

23   records right now.  Right?  They're unable to produce the

24   records.  However, just based upon his credit history we

25   determined -- and again, we tried to -- my client had tried to

1  go ahead and dispute it with Trans Union over multiple times.

2  Trans Union just verified it each time.  I would like to go

3  further in this case to see how Trans Union have actually, have

4  verified it.  I'm assuming when they receive multiple disputes

5  from one consumer, right, and they see that the same issue

6  keeps on coming over and over, I would expect Trans Union to do

7  a further investigation to see whether or not this item is

8  reporting accurately as opposed to just going to the furnisher,

9  to American Express, and just saying is this accurate?  And

10  they respond it is accurate.  Right?  If they continue to do

11  that over and over each time, nothing is going to change.  So I

12  would expect Trans Union to somehow to in some way to go ahead

13  once they receive multiple disputes to go ahead and escalate

14  it.  So as part of our discovery against Trans Union we will

15  look what exactly are their policies and procedures as to when

16  a consumer sends over a dispute.  How do they verify that's

17  accurate?  Is it simply someone sitting at a computer, they

18  send it to American Express and American Express simply

19  responds saying that this is reporting accurately?

20        I will also say as part of my client's dispute, my

21  client had told Trans Union that when looking at the other two

22  credit reporting agencies, the other two credit reporting

23  agencies were not in fact showing he was late in making the

24  payment in 2015.  So my client told Trans Union that he

25  would -- that the other bureaus were not reporting that, it was

1  only Trans Union.  So at that point I would expect once again

2  Trans Union to make a further investigation and figure out

3  whether or not this is reporting in the correct way.

4          MS. NICODEMUS:  I'm sorry, if I may just jump in, I

5  having a little bit of trouble following plaintiff's counsel,

6  but it seems to me the gist of what he's saying is that this is

7  an issue as to Trans Union's procedures and whether their

8  investigation was sufficient under the circumstances.  But

9  that's just putting the cart before the horse.  This lawsuit

10  should be dismissed.  He should withdraw this lawsuit if he

11  cannot establish that his client made a timely payment and that

12  this is inaccurate.  And it's just -- I don't really understand

13  what he expects Trans Union to do under these circumstances

14  when there's simply no evidence whatsoever that his client

15  timely made this payment.  American Express is saying that he

16  paid it late.  They have the business relationship with the

17  plaintiff.  And I don't understand how he filed a lawsuit and

18  puts the burden on Trans Union when he's the one that's

19  alleging that he made the timely payment.  If he knows he made

20  the payment on time, then surely he has his own banking

21  records, his own checkbook, a canceled check, a copy of a

22  statement.  And he can obtain those from American Express to

23  establish.  And then we'll be more than happy to talk about

24  settling the case.  But until then, I think, you know, I think

25  that he should -- if he cannot prove this, if he has made every

1  attempt to find out whether or not in fact he can establish the

2  first required element of his claim, then I think he should

3  withdraw the lawsuit.

4       THE COURT:  All right.  Mr. Horowitz, how do you want

5  to proceed?

6       MR. HOROWITZ:  I want to proceed on the case.  I want

7  to do discovery on the case.  I would like to get records

8  obviously from the furnisher, American express.  I'd like to

9  see what the policies and procedures are, how Trans Union when

10 they received the multiple disputes from my client, how they

11 respond to those disputes.  What are the policies when my

12 client disputes and tells them look, the other two credit

13 reporting agencies are not showing this account with the late

14 payment in 2015.  Only Trans Union is doing at.  Obviously,

15 there is some problem there.  All right?  So the policies and

16 procedures by just sending this dispute over to the furnisher

17 and having them verify obviously after multiple times, this was

18 not something that was helping my client.

19      THE COURT:  All right.  Well, so where are we with

20 initial disclosures?  And Mr. Horowitz --

21      MR. HOROWITZ:  Yes.

22      THE COURT:  -- this is going to come to a head very

23 soon because initial disclosures would anticipate that you be

24 providing proof and evidence that the payment was timely, that

25 there was a timely payment made.  So let's look at the dates.

1   So I see the initial disclosures were already exchanged on May

2   10th.  Is that right?

3          MR. HOROWITZ:  Yes.

4          MS. NICODEMUS:  We got them from plaintiff's counsel

5   this morning but yes, we have them and they do not provide any

6   evidence whatsoever of an inaccuracy.  And we'd like to ask the

7   Court to issue an order requiring plaintiff to provide that or

8   withdraw the case.

9          THE COURT:  Okay.  I am going to -- let's see, and by

10  May 31st the parties are to produce their initial relevant

11  documents.  Mr. Horowitz, is that going to include timely

12  payments?

13         MR. HOROWITZ:  Well, not until I subpoena American --

14  until I subpoena the furnisher to try to get the records.

15         THE COURT:  I guess I'm just still not understanding

16  how your client cannot have one shred of evidence whether

17  electronic or paper --

18         MR. HOROWITZ:  I'll go back to my client --

19         THE COURT:  -- to indicate that there was a timely

20  payment made.

21         MR. HOROWITZ:  I'll go back to my client.  As of now

22  we do not have it.  But again, Your Honor, I think --

23         MS. NICODEMUS:  Mr. Horowitz, are you saying you're

24  going to go back to your client --

25         MR. HOROWITZ:  -- I think part of it --

12

1          MS. NICODEMUS:  -- because I just want to --

2          MR. HOROWITZ:  Excuse me?

3          MS. NICODEMUS:  -- reiterate that the complaint was

4   filed 90 days ago and I've asked you three times since the

5   complaint was filed to provide us with that evidence and then

6   we would be happy to talk about --

7          MR. HOROWITZ:  But again, Your Honor, I think part of

8   it is the fact that --

9          MS. NICODEMUS:  -- [inaudible] my client is --

10          THE COURT:  Stop, stop.  This is part of the problem

11  with having telephone conferences.  Another issue, Mr.

12  Horowitz, is your client interested in settlement at all?

13          MR. HOROWITZ:  Yes.

14          THE COURT:  Okay.  If we're going to move towards an

15  earlier or quicker settlement conference which would ideally be

16  in your client's interest, that is discovery that I would

17  direct to be provided.  And if your client is not in possession

18  of any of those documents that would be sufficient to show that

19  a timely payment was made, I have to tell you your case is in

20  serious trouble.  Okay?  I don't think it should have to go to

21  subpoenaing American Express.  You know, I mean as a litigant

22  in this court, or any court for that matter, and particularly

23  as a plaintiff, before you bring a case, if you have relevant

24  documents you should not be destroying them.  So for you to sit

25  here today and tell me that he does not have records or has not

1   retained records relating to that January 2015 incident when

2   you are telling me that he has also escalated it with Trans

3   Union at least ten times, that's a little concerning.  I mean

4   that starts to sound like spoliation and I'm really concerned

5   about that.

6          MR. HOROWITZ:  I don't think my client when he

7   originally had the records he was anticipating he would so.  My

8   client had an account in 2015 --

9          THE COURT:  Stop.  But you're telling me that at some

10  point in time that he escalated this with Trans Union allegedly

11  ten times, received no resolution, and then sometime in the

12  intervening four years destroyed all of his records and then

13  decided to sue.

14         MR. HOROWITZ:  I don't think that's exactly how the

15  events transpired.  When people get their credit card records

16  they don't necessarily hold them, hold onto the credit records,

17  the credit cards receipts.  Right?  You get the credit card,

18  you pay it.  Right?  And then you move on.  Right?  Then what

19  happened was my client saw his credit report, his Trans Union

20  report and he noticed that there was this month in 2015 that

21  was reporting that he did not make the payment on time.

22  Obviously, that hurts his credit score.  Right?  That affects

23  him.  So he wanted to remove that.  So as part of trying to get

24  that removed so his credit score improves, he sent a dispute to

25  Trans Union.  And mind you, it was only on Trans Union.  It

14

1  wasn't on the other two bureaus.

2          THE COURT:  Stop.  Okay.  When did he send the

3  dispute to Trans Union?  And what does that involve, a phone

4  call?

5          MR. HOROWITZ:  No.  You could send a letter, you

6  could do it online, a letter.

7          THE COURT:  Well, there should presumably be some

8  records related to that.

9          MR. HOROWITZ:  Yes.  And Trans Union presumably is

10 going to supply all the records, what they received and when

11 they received them all.

12         THE COURT:  I'm having a problem with the very, very

13 first step which is was the payment late or not?

14         MR. HOROWITZ:  It was.  I mean it was not.  Excuse

15 me.

16         THE COURT:  All right.  If this case is going to go

17 to an earlier settlement conference, what early discovery would

18 either side need?

19         MR. HOROWITZ:  So what I would require is all the

20 records from the defendant, how many disputes they received,

21 when they received them, how they responded to them, how they

22 responded to the disputes.

23         THE COURT:  Wait, wait, wait.  No, no, no, no, no,

24 no.  When I talk about early discovery in aid of settlement,

25 I'm talking about information that is uniquely in the

15

1  possession of one party or the other, not wholesale give me all

2  you've got, I'll give you all I've got.  Okay?  Early

3  settlement is what are some factual, some basic factual

4  disputes that ought to be resolved by documents and information

5  in the unique custody of one or the other party that if

6  exchanged would lead to a change in the position between the

7  parties?  Okay?  And Ms. Nicodemus, you'll get a chance to

8  speak because I'm headed your way next.  But what do you need

9  from Trans Union that your client should not already be in

10 possession of that would change your position?

11        MR. HOROWITZ:  So what we always look for these type

12 of cases, what Trans Union has, it's called an ACDV.  An ACDV

13 is what Trans Union, when they send over to the furnisher.  So

14 I would like to see those ACDVs, how they communicated, what

15 was the communication between Trans Union and the furnisher.

16        THE COURT:  Okay.  And this is a question for Mr.

17 Horowitz.  And presumably if each time Trans -- if Trans Union

18 shows that they reached out to the furnisher and each time Amex

19 responded saying this is a late payment, then where is your

20 beef with Trans Union?  Isn't your argument with American

21 Express at this point?

22        MR. HOROWITZ:  No because again, what are their

23 policies?  Again, that's getting a little further in the case

24 but I want to know then what their policies and procedures are

25 when my client continually sends over a dispute and he's saying

1  to Trans Union that only you're reporting the month of 2015,

2  January 2015 as being late as opposed to the other two bureaus.

3  What are their policies?  Why are they not looking further into

4  it?  Why are they just relying on the furnisher if the consumer

5  is saying that the furnisher is not reporting it in the correct

6  way, right?  And they --

7           THE COURT:  Well again, but that goes back to if at

8  that point your client is saying well the furnisher is not

9  reporting it in the correct way, what do you go back to?

10          MR. HOROWITZ:  We go back to the --

11          THE COURT:  American Express, right?

12          MR. HOROWITZ:  To Trans --

13          THE COURT:  You're not reporting -- American Express,

14  I have a credit card with you.  You're not reporting --

15          MR. HOROWITZ:  But there has to be some liability and

16  responsibility on Trans Union as well.  Trans Union can't just

17  say if we would provide them -- let's say my client had sent

18  over a dispute and in the dispute they went ahead and they sent

19  over to Trans Union, they would send over proof that my client

20  had made this on time, right, had made this payment on time,

21  right?  So then Trans Union, even though the furnisher American

22  Express would have said that the account is reporting the

23  correct way, then for sure Trans Union, how can they rely on

24  American Express?  I provided Trans Union with the correction

25  information to show that the furnisher is not reporting in the

1   correct way.  So my claim, our claim, is that once Trans Union

2   received the dispute from the consumer and the consumer

3   constantly told Trans Union it is not reporting the correct

4   way, a further investigation has to be completed on the part of

5   Trans Union.

6           THE COURT:  All right.  Ms. Nicodemus?

7           MS. NICODEMUS:  Yes.  Thank you, Your Honor.  Just at

8   the outset, and I understand again we're talking about

9   discovery in aid of settlement, plaintiff has, you know,

10  reached out on settlement and my client is unwilling to discuss

11  settlement without proof of an inaccuracy.  If there isn't

12  proof, then they intend to litigate this case and ultimately to

13  seek sanctions against the plaintiff for bringing this lawsuit.

14  In any event, we're more than happy to turn over the following

15  documents which would include plaintiff's dispute letters to

16  Trans Union, which didn't include anything other than his say

17  so, his word that the payment was timely made.  No evidence

18  whatsoever, as well as the ACDVs that plaintiff's counsel

19  referred to.  Those are computer related documents that show

20  the correspondence between Trans Union and the furnisher's

21  statement that in fact the payment was late and was accurate.

22  We're happy to turn those over.  We're not going to turn

23  anything over that involves policies or broader documents like

24  that.  They're not relevant.  But what I would like from

25  plaintiff is two things.  One, proof that the payment was

1  timely made.  In other words, proof of the inaccuracy,

2  something other than what we have now which is merely

3  plaintiff's letter stating that.  So we'd like that as well as

4  any evidence of damages and those would include things like a

5  credit denial letter that specifically states that credit was

6  denied based on a Trans Union credit report.  And I think

7  there's no reason we can't exchange those documents, you know,

8  by the 5/31 deadline.  And I'd like plaintiff's representation

9  that if he doesn't have those documents that he will withdraw

10 the case.  If he does have those documents, then we're more

11 than happy to resolve this and we may not even need the Court's

12 assistance in the settlement conference although we're more

13 than happy to cooperate in one.

14            THE COURT:  Okay.  All right.  Can you turn those

15 documents over by May 31st, Mr. Horowitz?

16            MR. HOROWITZ:  Again, I'm not sure if I'll have the

17 proof of a timely payment by May 31st.

18            THE COURT:  Then how much time do you need?

19            MR. HOROWITZ:  Today's 5/16.  I don't have a date set

20 right now.  How about a month from 5/31?

21            THE COURT:  No, not a month from 5/31.

22            MR. HOROWITZ:  A month from today?

23            THE COURT:  Okay.

24            MR. HOROWITZ:  Okay.

25            THE COURT:  And I'm very concerned that you are

1  representing right now that your client does not have in his

2  possession and custody or control -- I mean of course you're

3  going to go back and speak to your client --

4          MR. HOROWITZ:  Yes.

5          THE COURT:  -- about it and really try to get proof

6  of those documents but I'm concerned that your client did not

7  receive documents that he should easily have before bringing

8  this case and whether that might constitute spoliation.  I also

9  want to remind you of your duties as an officer of the court

10 that if there is a claim that you cannot prove that you will

11 act accordingly.  I don't think any client is worth your

12 reputation and your integrity on the line for.

13         MR. HOROWITZ:  I agree with that, Your Honor.

14         THE COURT:  So now might be a good time to have a

15 long, hard talk with your client and see if they have any of

16 the documents that Ms. Nicodemus referenced.

17         So four weeks from today is June 20th.  All right?  So

18 a written order will follow.  Four weeks is June 13th?  But you

19 know what, I'll give you -- so a month from today would be June

20 15th.  I'll give you five weeks, okay?

21         MR. HOROWITZ:  Thank you.  I appreciate that, Your

22 Honor.

23         THE COURT:  Okay.  A written order will follow but we

24 do -- this conference is being recorded so you can also request

25 a transcript.  A written order will follow but the parties are

20

1   to exchange documents by June 20th and then meet and confer on

2   how they want to proceed on this lawsuit.  So defendant will

3   provide the plaintiff plaintiff's dispute letters that he

4   submitted to Trans Union, the ACDVs.  Plaintiff will turn over

5   to defendant proof that payment was timely made and any

6   evidence of damages, for example, a credit denial letter based

7   on whether credit was denied on the basis of Trans Union's

8   credit report.  Okay?

9            MR. HOROWITZ:  Okay.

10            THE COURT:  And then so that's June 20th.  Oh wow,

11   wait.  So then one week later by close of business on June 27th

12   the parties are to submit a joint letter indicating whether

13   they would prefer to proceed with discovery or would like to go

14   to a settlement conference.  Okay?

15            MR. HOROWITZ:  Okay.

16            THE COURT:  Ms. Nicodemus, you sound like you want to

17   say something.

18            MS. NICODEMUS:  I just wanted -- yes, I appreciate

19   that, Your Honor, and I think that sounds like a great way to

20   proceed.  I just wanted to get a little clarification what our

21   options would be if in fact the plaintiff has not produced the

22   documents.  I know you said that, you know, he has certain

23   obligations, that presumably he would be willing to withdraw at

24   that point.  And if that does not occur, then presumably Trans

25   Union could file an early dispositive motion in order to

21

 1  prevent the expenditure of further fees in discovery and so on

 2  on a case for which there's no foundation.

 3          THE COURT:  Right.  You could also file a motion to

 4  compel.  I mean I'd advise you to stay in touch with Mr.

 5  Horowitz because, you know, Mr. Horowitz, you got to get your

 6  client --

 7          MR. HOROWITZ:  Understood.

 8          THE COURT:  -- to give you what they have.  And if it

 9  turns out that they can't prove that initial element of their

10  claim, then it's not worth it for you as a lawyer, as their

11  lawyer --

12          MR. HOROWITZ:  Understood.

13          THE COURT:  -- to pursue this case.  Okay?  So I'd

14  advise you to stay in touch.  That's why I am directing a joint

15  letter on the 27th.  Even if you're not able to agree on how you

16  should proceed, then let the joint letter state each side's

17  position.  Okay?

18          MS. NICODEMUS:  Great.  Thank you, Your Honor.

19          THE COURT:  All right.  Thank you.

20          MR. HOROWITZ:  Thank you, Your Honor.

21          THE COURT:  Anything further?

22          MS. NICODEMUS:  No.  Thank you, Your Honor.

23          MR. HOROWITZ:  No thank you.

24          THE COURT:  Okay.  Thank you very much.

25                      *  *  *  *  *  *

22

1    I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                           _Mary Greco_____

6                              Mary Greco

7  Dated:  August 20, 2019